CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/25/2026

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
     DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

|  |  |
|---|---|
| SAMANTHA K.,[1] *Plaintiff*, <br><br> v. <br><br> SOCIAL SECURITY ADMINISTRATION, *Defendant*. | CASE NO. 6:25-CV-00022 <br><br> MEMORANDUM OPINION & ORDER <br><br> JUDGE NORMAN K. MOON |

Plaintiff Samantha K. ("Samantha") seeks judicial review of the Social Security Administration's ("SSA") determination that she is not disabled and is consequently ineligible for disability insurance benefits (DIB) and supplemental security income (SSI). Dkt. 1. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Standing Order 2023-19, the Court referred this matter to U.S. Magistrate Judge C. Kailani Memmer for proposed findings of fact and a recommended disposition. Judge Memmer issued her Report and Recommendation ("R&R"), recommending that the Administrative Law Judge's ("ALJ") decision be affirmed and this appeal be dismissed. Dkt. 17. Samantha objected to the R&R, arguing that Judge Memmer should have found that the ALJ erred by treating a "superficial interaction" limitation as a restraint on the quantity of her interactions, as opposed to the quality of those interactions. Dkt. 18.

Based on Samantha's single objection, the Court must undertake a *de novo* review of this issue. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). Because the ALJ erred by conflating the quality and quantity of Samatha's interactions, this matter must be remanded for further administrative proceedings.

---

[1]     Due to privacy concerns, only the first name and last initial of the claimant are used in Social Security Opinions.

**LEGAL STANDARD**

In determining whether a person is disabled and eligible to receive SSI, an ALJ for the SSA

engages in a five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920. *See e.g.,*

*Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir.

2015). This process requires the ALJ to:

> (1) assess whether a claimant engaged in substantial gainful activity since the alleged disability onset date;
>
> (2) determine whether her impairments meet the regulation's severity and durations requirements;
>
> (3) ascertain whether her medical impairment rises to the level of the regulation's enumerated impairments;
>
> (4) consider whether she can perform past relevant work, and if not;
>
> (5) consider whether she could perform any other kind of work.

*Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the first three steps are inconclusive, the

ALJ must assess a claimant's residual function capacity ("RFC"), which is "the most [the claimant]

can still do despite [her physical and mental] limitations [that affect h[er] ability to work]." 20

C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Only after calculating the RFC does the ALJ turn to steps

four and five.[2] *Lewis*, 858 F.3d at 861.

Determining the RFC requires an ALJ to consider the claimant's "medically determinable

impairments." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). The ALJ must consider

"all the relevant evidence, including medical records, observations of treating physicians and

others, and an individual's own description of her limitations," *Combs v. Berryhill*, 878 F.3d 642,

---

[2]      Until step five, it is plaintiff's burden to demonstrate disability; however, at step five, this burden switches to the SSA to demonstrate plaintiff is not disabled. *See Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016).

646 (8th Cir. 2017), and "evaluate the persuasiveness of that evidence." *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025). The factors for considering the persuasiveness of evidence are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any other factors. *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)–(5)). An ALJ need not explain in detail how he "evaluate[d] the persuasiveness of each piece of evidence in the record," but only "needs to say for each 'medical source' in the record, how each of the first two factors applies—that is, whether that source's conclusions are supportable by medical evidence and consistent with the rest of the record." *Id.*

The ALJ must "offer[] a sufficient rationale in crediting certain evidence and discrediting other evidence." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023). Missing analysis "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Therefore, the ALJ must "'build an accurate and logical bridge from the evidence to [their] conclusion[s].'" *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017)). The ALJ's decision must be upheld if it is supported by "substantial evidence" and the ALJ "applied the correct legal standards." *Drumgold*, 144 F.4th at 604.

### ANALYSIS

Because Samantha does not object to the R&R's recitation of the factual background and claim history in this case, the Court incorporates that portion of the R&R into this opinion. Dkt. 17 at 1-31. By way of summary, Samantha applied for (and was denied) SSI based on her alleged disability which "began on June 1, 2021." Dkt. 17 at 1 (citing R. 207, 214).[3] Throughout the

---

[3]    The administrative record is cited as "R" followed by the page number.

proceedings, Samantha introduced medical records and testimony demonstrating she struggles with "panic attacks," "ruminating thoughts," "sleep disturbances," as well as "low back pain, mild intermittent asthma, hypercholesterolemia, vitamin D deficiency, ADHD, allergic rhinitis, long-term drug therapy, and tobacco dependence." *Id.* at 5, 8 (R. 386-87, 543-44). She complained that her "low back pain" eventually "radiated to the bilateral hips and down the bilateral extremities to the knees." *Id.* at 12 (R. 894-95, 875).[4] Because of these compounding health issues, Samantha sought SSI.

The ALJ considered significant evidence from Samantha's medical teams regarding her alleged disability, including a report from two non-examining state agency medical consultants—Drs. Perrott and Leizer. In their report, Drs. Perrott and Leizer opined that Samantha "could understand and remember simple instructions, sustain mental focus sufficient for completing simple tasks, can have brief, *superficial interactions*, requires little to no public contact and low social interactions, and does not deal effectively with changes and requires a low stress work setting." Dkt. 6-2 at 25 (emphasis added). This appeal turns on the ALJ's application (or misapplication) of the "superficial interaction" limitation contained in Dr. Perrott's and Dr. Leizer's report.

The ALJ rejected the "superficial" interaction limitation, finding that term to be "vague" and undefined by SSA regulations. *Id.* at 22-23 (R. 21-22). Rather than incorporating a superficiality limitation into Samantha's RFC, the ALJ found that Samantha should be "limited"

---

[4]    Samantha does not object to the first three steps of the ALJ's analysis where the ALJ found Samantha had not been engaged in substantial gainful activity since June 1, 2021; that she had seven severe impairments; but that her impairments did not rise to the level of the regulation's impairments. Dkt. 6-2 at 20-21 (R. 19-20). The ALJ found she had no past relevant work experience in line with her limitations and correctly proceeded to calculate her RFC. *Id.* at 27-28 (R. 26-27).

to "*frequent* interaction with supervisors and coworkers and *occasional* interactions with the general public." *Id.* (emphasis added). Beyond these frequency limitations, the ALJ did not impose any other social interaction limitations. *Id.*

Samantha argues that the ALJ erred by only limiting the quantity (occasional), and not the quality (superficial), of her contact with the public. Dkt. 18 at 4 (citing *Bostic v. Comm'r of Soc. Sec.*, 2024 WL 551478, at *4 (W.D.N.C. Feb. 12, 2024)).[5] Her objection presents an issue that is being hotly debated amongst district courts—whether ALJs err by conflating quantity limitations with quality limitations.[6] *See Stephen D. v. Comm'r of Soc. Sec.*, 2023 WL 4991918, at *8 (S.D. Ohio Aug. 4, 2023) (collecting cases). Most district courts err on the side of remand when ALJs fail to account for a "superficiality" limitation. *See Ashley E. A. v. Kijakazi*, 2023 WL 2283455, at *6 (D. Minn. Jan. 30, 2023) (collecting cases). Because this approach is the most consistently adopted across persuasive precedent, the Court will adopt it, finding a difference exists between the terms "occasional" and "superficial." *Eden v. Comm'r of Soc. Sec.*, 2019 WL 7666532, at *2 (N.D. Ia. June 6, 2019); *see also Redd v. Comm'r of Soc. Sec.*, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("With regard to social limitations, courts have distinguished limitations that concern 'the quality or nature of interactions' from limitations that concern 'the quantity of time involved with those interactions.'").

---

[5]    According to Social Security regulations, "occasional" interactions are interactions that occur "from very little up to one-third of the time." S.S.R. 83-10 at *5-6 (1983). Likewise, "frequent" interactions are interactions that occur "from one-third to two-thirds of the time." *Id.* "Superficial" interactions are not defined in the regulations. *Id.*

[6]    The Court is unaware of any circuit court that has resolved this question, although the Seventh Circuit has mentioned it in passing. *See Reynolds v. Kijakazi*, 25 F.4th 470, 475 (7th Cir. 2022). Without any analysis, the Seventh Circuit suggested that "the distinction . . .between 'occasional' and 'superficial' may not matter for purposes of the RFC analysis." *Id.* In light of the significant persuasive authority indicating otherwise, the Court is not persuaded by the Seventh Circuit's dicta.

A claimant could have no limitations on the number or duration of interactions while having significant limitations on the substance or intensity of those same interactions. *See Sanders v. Astrue*, 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012) ("Even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions."). Consider the differences between a cashier at a fast-food restaurant, whose public interactions will be both constant and perfunctory, with a therapist, who may only have a few clients a day, but will engage in deep interactions with each of them.[7] Simply put, quantity and quality are different variables, and an ALJ cannot adequately assess a claimant's ability to work if they are not treated as such.

Importantly, the ALJ found Drs. Perrott and Leizer's opinion to be "persuasive." *Id.* at 26 (R. 25). However, the ALJ found that limiting Samantha to "superficial" contact overstated the "severity" of her limitation because, during the proceedings, Samantha testified she "spen[t] time with others" and "went to church recently."[8] Yet, in making this finding, the ALJ erred by confusing quantity and quality. Spending time with others and going to church do not inherently mean a person is engaging in non-superficial social interactions. After all, someone could regularly attend church and never speak to a fellow parishioner. Given this, the evidence the ALJ relied upon to limit Dr. Perrott's and Dr. Leizer's opinion went to quantity, not quality, of contact.

---

[7]    The Court cannot agree that there is a "strong correlation" between "occasionally" and "superficially." *See Culbertson v. Commission of Social Security*, 2026 WL 696554, at *4 (N.D. Ohio Mar. 12, 2026). As shown by the therapist example above, a worker can have occasional interactions that are deep and substantive. Infrequency is not synonymous with shallowness.

[8]    "While there is no requirement that a residual-functional-capacity determination be supported by a specific medical opinion, including a state agency psychological consultant's opinion, the ALJ is required to explain why a medical opinion was not adopted if it conflicts with the residual functional capacity." *Ashley E. A.*, 2023 WL 2283455, at *7 (citations and marks omitted).

6

In sum, the ALJ did not address how Dr. Perrott's and Dr. Leizer's superficiality limitation was unsupported by medical evidence or was inconsistent with the rest of the record. Instead, the ALJ simply dismissed the term "superficial" as "vague" and ambiguously noted that Dr. Perrott's and Dr. Leizer's opinion was being curbed based on "policy-compliant limitations." Dkt. 6-2 at 25 (R. 26). Under these circumstances, there is simply no way for the Court to assess whether the ALJ adequately considered (and rejected) the limitations on the "quality" of Samantha's social interactions when formulating her RFC.

Although on remand the ALJ may find that Samantha is not disabled after considering her "superficiality" limitation, the ALJ cannot simply dismiss it without explaining what evidence supports his conclusion.[9] *See*, *e.g.*, *Elaine S. v. Comm'r of Soc. Sec.*, 2022 WL 4102814, at *5 (S.D. Ohio Sept. 8, 2022) ("Because the ALJ failed to either adopt the state agency psychologists' opinion that Plaintiff should be limited to only 'superficial' contact with others, or to explain why he did not do so, the matter must be remanded to the Commissioner for further consideration of this issue."). Accordingly, the ALJ erred, and remand is required.

<u>CONCLUSION</u>

After undertaking a *de novo* review of those portions of the R&R to which Samantha objected, the Court finds the ALJ erred by failing to adequately explain what evidence supported his decision to reject Drs. Perrott and Leizer's opinion that Samantha was limited to superficial

---

[9]    Based on the testimony of the vocation expert, the ALJ found that Samantha could be a small product assembler, a mail clerk, or a marker. Dkt. 6-2 at 28 (R. 27). While the Court suspects that these vocations only require "superficial" interactions with co-workers and the public, there is insufficient evidence in the record for the Court to "confidently say" that "no reasonable administrative factfinder could [] resolve the factual matter in any other way." *Lueras v. Comm'r, SSA*, 2022 WL 244142, at *3 (10th Cir. Jan. 27, 2022). Therefore, the Court cannot overlook the ALJ's error as "harmless" and simply conclude that a product assembler, mail clerk or marker has superficial interactions. *Id.*

interactions. Accordingly, the Court will sustain the Objection (Dkt. 18) and remand this case for further proceedings pursuant to sentence four under 42 U.S.C. § 405(g).

The Clerk of the Court is hereby directed to terminate the R&R and strike this case from the Court's active docket. The Clerk shall also send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge C. Kailani Memmer.

A separate judgment will issue.

Entered this 25th day of March, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE